Avert, J.
This was a valued policy. The number of barrels of flour in both of the boats was 1,935, and the value stated in the policy $8,707.50, being $4.50 a barrel.
The court, in determining the loss on the cargo sunk in flat-boat No. 27, estimated the value as inserted in the p>olicy, and after deducting the payments actually made by the company to the insured, and the two and a half per cent, addition, according to the terms of the policy, rendered a judgment in favor of the insured for the balance. In adopting such a basis for their judgment, the common pleas erred, it is said; the particular errors are pointed out, and it is insisted :
1. That tho market value of flour in New Orleans, at the time the flat-boat would have arrived there, if no accident had happened, should have been the basis. Because it is claimed, according to the agreed case, that the flour was *to be sold there; and if the insured should obtain the price, in the New Orleans market, that would be just the amount they would have realized, had the cargo arrived in safety, and though this is less than the price at the place of shipment, yet, upon the principle of indemnity, said to be the true principle under the circumstances, this market value should have governed in estimating the loss. But such does not appear to us to be the correct rule. When the con *73 tract of insurance was executed, neither party could have known what would be the value of the article insured, at the time of its reaching the place of destination. Whether it would find a rising or a falling market could not bo foreseen ; and the contract ought not to bo subject to the uncertainties arising from continual fluctuations in the'market. The present suit is upon a valued policy; and according to the authority of our own court, as well as that1 of others, the value fixed by the parties in the contract is binding, unless there be proof of fraud or misrepresentation on the part of' the insured. The judgment in the court below is the same as in a ease of total loss and abandonment by the insured; and in this, according to the facts appearing upon the record, no error is discovered. There was no actual abandonment indeed, but this is not always necessary. The facts were not known to the insured, until their ownership in the entire property was at an end. Under the law, it w'as taken and sold, without any agency of theirs • there was nothing left but the money which the purchasers had paid ; and it would have been an idle'ceremony to attempt a formal abandonment. The boat, by the accident, had been sunk and destroyed, the whole cargo damaged, and as soon as practicable, after the accident and after the captain’s protest, the flour was shipped to New Orleans, the nearest and best place for the sale of such damaged cargo. The necessity for a quick transportation was so pressing, that, without regard to additional cost, four steamboats were suddenly employed to take this cargo to a place of sale. If the insured had been present, at the time the injury occurred, *lhere can be no doubt, but what they would have made the abandonment; and wo think it right to calculate their damage as upon a total loss. The flour had been consigned to Martin & Rogers, at New Orleans, and their service became necessary in order to make sale of it. Eor these services they charged commissions to the amount-of $143.33; and these charges are proved to be reasonable, by the evidence in the case. It is, however, objected, that- these commissions ought to be paid by the insured. Had the flour arrived uninjured and been sold by these consignees, it is very certain that the commissions would have been deducted from the proceeds, before transmitting them to the insured. But they originated from the fact, that the flour was in a damaged state, and constantly becoming less valuable. For if it had arrived in a sound state, there would have been no sale, and no *74 such expenses incurred, because, at the price, the consignees would have had no right to sell it, as is shown in the agreed statement.
It is insisted also that the freight in the flat-boats, set down at $756.90, should be deducted from tho claim of the insured; that this, had the boat taken the' flour to its destination, must have been paid by the freighters, who were the insured; and in such ease, of course, the amount would come out of the proceeds of the flour. Besides, it is now ascertained that Davis & Smith, the owners of tho boat, have abandoned their claim for the freight; and therefore it is but just, that the sum in this matter saved, be allowed to the insurers. If the principle of indemnity were alone to decide between the parties upon this point, there might be some excuse for deducting this sum from the insurer’s loss. But not applying that principle, we can see nothing in the case to justify us in transferring to the insurers the rights or benefits, whatever they may bo, of a contract with which they never had any connection or concorn. Upon the whole, then, tho decision of the court seems to have been in conformity with the laws applicable to the case, and a new trial is denied.